# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICKI L. HIGGINS, on behalf of herself and all others similarly situated, | ) ) ) | Case No. |
| Plaintiff, | ) ) | |
| vs. | ) ) | **COMPLAINT** |
| PATENAUDE & FELIX, A.P.C., TARGET NATIONAL BANK, ADAM GRIM, JANICE L. LOKEN, AND JOHN DOES I-X | ) ) ) ) ) ) | **PUTATIVE CLASS ACTION** |
| | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

COME NOW, Plaintiff, on behalf of herself and all others similarly situated, by and through her counsel of record, and for her Complaint against Defendants, alleges as follows:

## SUMMARY OF CASE

1. Defendants, by injecting false, misleading, and fraudulent affidavits into legal proceedings throughout the country in the attempted collection of debts, engaged in a concerted practice of fraudulent, misleading and unlawful debt collection and litigation activity against Plaintiff and many others like her. Defendants' collective conduct and illegal enterprise as described herein as will be proven at trial is a complete affront to the legal system, as well as the tens of thousands of individuals who suffered adverse consequences as a result of Defendants' collective fraudulent conduct. Plaintiff, on behalf of herself and others similarly situated, brings this action against Defendants according to and to remedy Defendants' violations of the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO") and against Defendant Target National Bank according to and to remedy violations of the Pennsylvania Fair Credit Extension Uniformity Act, 73 Pa.C.S.A. § 2270 et seq. (PFCEUA).

## PARTIES AND JURISDICTION

2. Plaintiff Vicki L. Higgins was always relevant hereto a resident and citizen of Westmoreland County, Pennsylvania.

3. Defendant Target National Bank (hereafter "TNB") is a national banking association with a place of business located at 3901 W 53rd Street, Sioux Falls, South Dakota 57106. TNB is a subsidiary of Target Corporation.

4. Defendant Adam Grim ("Grim"), is a resident and citizen of the State of Minnesota. Defendant Grim is employed by Target Corporation.

5. Defendant Janice L. Loken ("Loken"), is a resident, citizen and Notary Public of the State of Minnesota. At all pertinent times hereto, Defendant Loken acted in an official capacity as a notary public in and for the State of Minnesota. Defendant Loken is an employee of Target Corporation.

6. Defendant Patenaude & Felix, A.P.C. (hereafter "P&F") is a foreign professional law corporation engaged in the business of debt collection as well as the practice of law in the Commonwealth of Pennsylvania. P&F's principal place of business is 4545 Murphy Canyon Road, 3rd Floor, San Diego, California 92123. P&F regularly files lawsuits against Pennsylvania residents in Pennsylvania courts as part of its debt collection activities.

7. Defendant John Doe I is the officer at Target Corporation who authorized the implementation of the false affidavit factory described below in this Complaint.

8. Defendants John Does II-X are individuals or business entities unknown to Plaintiff at this time, and therefore, are sued by fictitious names. Plaintiff is informed and believes, and on this bases alleges, that each of the Defendants John Does II-X were in some

manner legally responsible for the events, happenings, injuries and damages alleged in this Complaint.

9. Jurisdiction over Plaintiff's claims is proper in this Court pursuant to RICO, 18 U.S.C. § 1961 et seq. and 28 U.S.C. § 1337. This Court has supplemental jurisdiction to hear and adjudicate Plaintiff's state law causes of action pursuant to 28 U.S.C. § 1367.

10. Personal jurisdiction is proper as to all Defendants, each of whom has conducted debt collection and/or litigation activities in the Commonwealth of Pennsylvania and availed themselves of the Pennsylvania court system in their capacity as a creditor, debt collector and/or law firm, and committed unlawful conduct toward Plaintiff, a Pennsylvania resident and citizen. Personal jurisdiction is proper over all Defendants because each of them conducts or has conducted business in Pennsylvania.

11. This Court has general and specific personal jurisdiction over Defendants. Defendants were each engaged in unfair business practices and a racketeering enterprise directed at and/or causing injury to persons residing, located or doing business throughout the United States. Plaintiff lived in Pennsylvania for many years; and well before Defendants commenced the state case against her as described below. Defendants knew or should have known that their conduct on which this case is based was directed significantly at Plaintiff in the Commonwealth of Pennsylvania at the time of their conduct. Defendants knew or should have known that Plaintiff lived in Pennsylvania at the time they created or used the false and misleading affidavit against Plaintiff in the state court case described below.

12. Venue is proper in this District because Plaintiff lives in this District, the pertinent facts as to Plaintiff's claim occurred in this District and Defendants all transact business within this District.

13. The business activities of Defendants at issue in this Complaint were within the flow and substantially affected interstate trade and commerce. There has been a continuous and uninterrupted flow of activities in interstate commerce throughout the class period.

## FACTS

### The Target Corporation Fictitous Affidavit Factory

14. Target Corporation ("Target") was incorporated in Minnesota in 1902. Its principal place of business is 1000 Nicollet Mall, Minneapolis, Minnesota. Target operates as two reportable segments. Retail and credit card. Target's credit card segment offers credit to guests through Target's branded proprietary credit cards, the Target Visa and the Target Card Additionally, Target offers a branded proprietary Target debit card . Collectively, these cards help strengthen the bond with Target's guests, drive incremental sales and contribute to Target's results of operations. According to Target's 20100 annual report, Target's credit card program supports Target's core retail operations and remains an important contributor to Target's overall profitability and engagement with its guests.

15. On April 21, 2009, TNB, by and through the P&F law firm, sued Mrs. Higgins on an alleged TNB credit card debt . On July 7, 2009, TNB, by and through the P&F law firm, filed a praecipe to reinstate the complaint. (*Target National Bank v. Vicki L. Higgins,* Case No. 09CI03908, in the Court of Common Pleas of Westmoreland County) (Hon. Judge Ackerman, presiding) (hereafter the "Higgins state court case").

16. The complaint included, and relied upon, an affidavit provided by Adam Grim (hereafter "the Grim Affidavit" attached hereto as **Exhibit "A"**). Adam Grim, according to the affidavit, purported to be the "Authorized Agent of Target National Bank".

17. The Grim Affidavit represented that Adam Grim "reviewed the records of the above listed person (Vicki L. Higgins) and account,..."

18. The affidavit was purportedly signed and executed by "Adam Grim" and notarized by Defendant Janice L. Loken.

19. Mrs. Higgins subsequently obtained information indicating that the affidavit was false and misleading.  Specifically, Adam Grim **did not** review the records of Vicki L. Higgins and the account.  In fact, Grim didn't review any records prior to allegedly executing the affidavit.  Upon information and belief, at the time Grim executed the affidavit attached to this complaint as Exhibit A, he was in the process of executing hundreds of similar affidavits.

20. TNB, by and through the P&F law firm, discontinued without prejudice the Higgins state court case on September 4, 2009.

21. Mrs. Higgins incurred attorney's fees because of defending the lawsuit brought against her by TNB through P&F.

22. Grim did not appear before Loken, swear to the truth of the statements in the affidavit, or sign it in her presence.

23. Defendant Loken notarized the Grim affidavit despite knowing that Grim did not swear on oath to the truth of the content of the affidavit.

24. Defendants used email, the internet, and mail to transmit and receive affidavits.

25. Thousands (or more) of these false and misleading affidavits were concocted by Target employees and transmitted to P&F and other law firms and by Target, P&F and other law firms to courts across the United States in which TNB filed lawsuits to collect the debts it claimed against the thousands of people it sued.

26. Defendant Loken, pursuant to the law of Minnesota where she was wrongfully notarizing the false and misleading affidavits, was required to maintain a notary book of record documenting the date and identity of the affiant for all affidavits she notarized.

27. Upon information and belief, Defendant Loken failed to maintain a notary book of record.

28. Defendant Loken routinely placed her notary stamp or seal on the false and misleading affidavits even though the affiant never reviewed the records of the alleged debtor and account.

29. TNB took the false and misleading affidavits and utilized them to secure judgments against hundreds, and perhaps thousands, of alleged debtors. The consequence was the putative class: (a) paid TNB with the false belief and understanding that the affidavits were authentic, true, and legal statements; (b) incurred unnecessary attorney's fees and costs defending lawsuits brought by TNB; (c) lost lawsuits brought against them by TNB wherein courts of law relied upon the affidavits as authentic, true and legal statements; (d) had their credit scores suffer with the placement of an adverse judgment on their credit reports by TNB; and (e) suffered other consequences unknown at this time, as a consequence of Defendants' false representations that the affidavits were authentic, true, accurate and/or reliable in a court of law as proof that the debtors owed anything.

## COUNT I

### VIOLATION OF THE RACKETEER INFLUENCED CORRUPT ORGANIZATION ACT

30. Plaintiff repeats and re-alleges all of the Paragraphs above as if they were repeated here *verbatim*.

31. In relevant part, 18 U.S.C. § 1961(1) defines "racketeering activity" as "any act which is indictable under any of the following provisions of title 18, United States Code: [including]... section 891, ... section 894 (relating to extortion in collecting or attempting to collect an extension of credit), ... section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), and section 1344."

32. 18 U.S.C. § 1961(3) defines "person" to "include any individual or entity capable of holding a legal or beneficial interest in property."

33. 18 U.S.C. § 1961(4) defines "enterprise" to "include any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

34. 18 U.S.C. § 1961(5) provides that a "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity."

35  18 U.S.C. § 1341, specifically identified by 18 U.S.C. § 1961(1) as an indictable predicate for racketeering, provides in pertinent part that: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious...article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or

thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both."

36.     18 U.S.C. § 1343, specifically identified by 18 U.S.C. § 1961(1) as an indictable predicate for racketeering, provides in pertinent part that: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.  If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both."

37.     18 U.S.C. § 1962(c) provides in pertinent part that "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

38.     At all relevant times hereto, Defendants were "persons" within the meaning and scope of 18 U.S.C. § 1961.

39.     At all relevant times hereto, Plaintiff and each putative member of the class was and is a person within the scope and meaning of 18 U.S.C. § 1961(3).

40. From on or about April 2009 through the present, in the Western District of Pennsylvania and elsewhere, Target, by and through TNB, Grim, Loken, and other Target employees unknown to Plaintiff, together with P&F and other law firms unknown to Plaintiff, knowingly, intentionally and/or recklessly acted as an enterprise under 18 U.S.C. § 1961(4) engaged in an ongoing, open-ended scheme, artifice and pattern of racketeering under 18 U.S.C. § 1962(c), committing thousands of predicate acts of mail fraud, wire fraud, and/or extortionate collections by knowingly and intentionally: (a) providing false, misleading and/or fraudulent affidavits to TNB, (b) providing false, misleading and/or fraudulent affidavits toP&F and other law firms unknown to Plaintiff; and (c) providing false, misleading and/or fraudulent affidavits to Pennsylvania Courts.  TNB, Grim, Loken, unknown Target employees, P&F and law firms unknown to Plaintiff, aided and abetted in all such illicit and illegal activity.

41. From on or about April 2009 through the present, in the Western District of Pennsylvania and elsewhere, Target, by and through TNB,  Grim, Loken, John Doe I and other Target employees unknown to Plaintiff, perpetrated its pattern of mail fraud and wire fraud through its association-in-fact with  P&F and other law firms unknown to Plaintiff who used the fictitious affidavits together  forming racketeering enterprises to effectuate the predicate acts of mail fraud, wire fraud, identification fraud and/or extortionate collections under the control and direction of Target, TNB and  P&F and the other law firms.  TNB, P&F and other law firms who used the fictitious affidavits actively participated in the affairs of an enterprise with Target, Grim, Loken, and/or other Target employees:  (a) by receiving the affidavits provided by Target in bulk; (b) by virtue of filing thousands of credit card lawsuits TNB and P&F  and other law firms knew or should have known that Grimm and other unknown Target employees did not review records of the alleged debtor and the account.

42. Target together with TNB and P&F constituted an enterprise for the purposes of these civil RICO claims. Target, TNB and P&F had common purposes in the scheme described herein: to gain revenue from the collection of the debts they asserted using the false and misleading affidavits. In the period from April 2009 through the present, the enterprise had an ongoing organization and functioned as a continuing unit. During that period, one or more employees at Target regularly communicated, separately, with one or more employees a TNB and P&F and other law firms to arrange the filing of lawsuits. And during that period, employees at Target, TNB and P&F and other law firms regularly communicated to request and receive the false and misleading affidavits for TNB, P&F and other law firms to use in false filings in courts.

43. Target participated in and conducted the affairs of the enterprises for the common purpose of making illicit profits with the complicity, witting or unwitting, of the other members of the enterprise.

44. Defendants TNB, Grim, Loken, John Doe I and P&F committed the predicate acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 in at least the following ways. First, they used the mails or wires on thousands of occasions to request the false and misleading affidavits from Target. Second, Target used the mails or wires on thousands of occasions to send the false and misleading affidavits to TNB, P&F and other law firms. Third, P&F and other law firms used the mails or wires on thousands of occasions to send the false and misleading affidavits to courts to be filed in the records of the collection lawsuits that TNB, P&F and other law firms have commenced against Plaintiff and the class she seeks to represent. And fourth, P&F and other law firms used the mails or wires on hundreds, and perhaps thousands, of

occasions to send copies of the false and misleading affidavits to the persons against whom it filed those lawsuits or their lawyers.

45. All of those uses of the mails and wires furthered the scheme by Target, TNB, P&F, Grim, Loken and John Doe I to use the false and misleading affidavits to generate revenue and profit for Defendants, as described elsewhere in this Complaint.

46. Plaintiff cannot presently allege the specific dates of the mailings and wire transmissions she alleges here because she does not have access to them. Nor can she presently identify the specific persons who, acting on behalf of Target, TNB or P&F, used the wires or mails in each of the occasions described above, although it seems obvious that those persons were employees or representatives of Target or P&F. The records of those mailings and wire transmissions are maintained by Defendants, by the courts in which P&F and other law firms filed the false and misleading affidavits, perhaps by the persons against whom P&F and other law firms filed those lawsuits (or their lawyers). Plaintiff will request copies of those records in discovery in this case, and when and if necessary, will further amend this Complaint to provide additional and more specific information on the dates of the mailings and wire transmissions, the specific content of those mailings and wire transmissions, and the identities of the persons who mailed or wired them for Defendants.

47. During the time frame alleged herein, Target profited from the use of false, misleading and/or fraudulent affidavits by being able to transmit accounts without having to take the time or expense to actually demonstrate, through evidence admissible in a court of law, that the debts were due, valid and owing and/or by being able to transmit accounts that it would not have been able to transmit if it had been required to provide such evidence.

48.     During the time frame alleged herein, TNB, P&F and other law firms facilitated and also profited from the use of the affidavits Target provided, including false, misleading and/or fraudulent affidavits, by : (a) utilizing them to collect debt and prosecute claims against debtors with documentation which they knew or should have known was improper and not viable.

49.     But for the use of the false and misleading affidavits by TNB, P&F and other law firms, Target, TNB and P&F would have been unable to effectuate the scheme to defraud courts and consumers as set forth herein, including but not limited to using the false and misleading affidavits to substantiate the alleged debt inside or outside of litigation.

50.     As part of the racketeering schemes or enterprises described herein, Defendants have used the racketeering enterprises to expand their operations and generate profits.  The interstate commerce requirement of a RICO claim is satisfied because the racketeering claims alleged herein arise out of, and are based upon, Defendants' repeated and systematic use of interstate mail and wire transfers in furtherance of the racketeering schemes alleged herein.

51.     Defendants purposely and knowingly misrepresented the form, nature, substance and viability of the affidavits provided by Target, by and through the employees named herein and others, which is the direct and proximate cause of Plaintiff's and the putative class members' injury and damages.

52.     Plaintiff and the putative class members are direct victims of Defendants' wrongful and unlawful conduct and have been injured in their business or property for the purposes of 18 U.S.C. § 1964(c).  As the direct victims of Defendants' wrongful conduct, Plaintiff and the putative class have been injured in an amount to be determined by a jury at trial. Because the information necessary to calculate damages is contained in Defendants' records, the

Court will not need to adopt complicated rules apportioning damages in order to obviate multiple recoveries. Plaintiff will seek leave to amend this Complaint to set forth the exact amount thereof when the same is discerned.

53. As a direct and proximate result of Defendants' racketeering activities as described herein, Plaintiff, on behalf of herself and the putative class members, is entitled to recover treble damages for the injuries they sustained, restitution, as well as costs of suit and reasonable attorney's fees pursuant to 18 U.S.C. § 1964(c).

54. As a direct and proximate result of Defendants' racketeering activities as described herein, Plaintiff, on behalf of herself and the putative class members, is entitled to an Order, pursuant to 18 U.S.C. § 1964(a), enjoining and prohibiting Defendants from further engaging in the unlawful conduct which the enterprise has engaged in. Such an Order should provide that Defendants cannot take any further action in which they used the affidavit described here and that they must disgorge any money they already have collected on or from any such judgment.

## COUNT II

### VIOLATION OF THE PENNSYLVANIA FAIR CREDIT EXTENSION UNIFORMITY ACT

**(Asserted on Behalf of Plaintiff and the Putative ClassAgainst TNB)**

55. Plaintiff repeats and re-alleges all of the Paragraphs above as if they were restated here *verbatim*.

56. TNB is a "creditor" as defined by the Pennsylvania Fair Credit Extension Uniformity Act ("PFCEUA"), 73 Pa. Cons. Stat. Ann. § 2270 et seq.

57.     Section 2270.4(b)(5)(x) of the PFCEUA prohibits "The use of any false representation or deceptive means to collect or attempt to collect any debt..."

58.     TNB violated § 2270.4(b)(5)(x) of the PFCEUA by: (1) filing false, misleading, and/or fraudulent affidavits in an attempt to collect a debt.

59.     Plaintiff and the putative class have suffered and continue to suffer damages as a result of TNB's violations of the PFCEUA.

60.     TNB's unfair or deceptive debt collection practices under the PFCEUA constitutes a violation of the act of December 17, 1968 (P.L. 1224, No. 387), known as the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

61.     Plaintiff and the putative class are entitled to recover statutory damages, treble damages and reasonable attorney's fees and costs as provided by the PFCEUA and within the applicable statute of limitations.

## CLASS DEFINITIONS, ALLEGATIONS AND INJURY TO THE CLASS

62.     Plaintiff brings this action on her own behalf and on behalf of all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Plaintiff seeks certification of a class under Rule 23.

63.     <u>Class Definition:</u>     The class is composed of all pennsylvania citizens against whom Defendants used (either directly, through an attorney or agent, or through a legal filing) an affidavit substantially similar to the affidavit form reflected in Exhibit "A" of this Complaint.

64.     <u>Numerosity:</u>   The class is comprised of thousands of persons and is so numerous that joinder of all members is impracticable.

65.     <u>Commonality:</u> There are questions of law and/or fact common to the class.  The claims/defenses of Plaintiff as the representative party are typical of the claims/defenses of the

class. Further, the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and include, without limitation, the following:

    a.    Whether P&F and Target through its subsidiary TNB and employees Grim, Loken, and Defendant John Doe I conducted the affairs of an enterprise and/or participated in a pattern of racketeering activity.

    b.    Whether TNB violated § 2270.4(b)(5)(x) of the PFCEUA by: (1) filing with Pennsylvania Courts false, misleading and/or fraudulent affidavits in an attempt to collect a debt.

    c.    Whether the class is entitled to compensatory relief.

    d.    Whether the class is entitled to statutory relief.

    e.    Whether the class is entitled to injunctive relief.

    f.    Whether the class is entitled to declaratory relief.

    g.    Whether the class is entitled to attorney's fees and costs.

66.    <u>Typicality and Adequacy</u>:    Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the class members she seeks to represent, and she is similarly situated with members of the class. Plaintiff, as a representative party of the class, will fairly and adequately represent and protect the interests of the class. Furthermore, Plaintiff's interests are not antagonistic to the class. Plaintiff has retained counsel who is competent and experienced in the prosecution of class action litigation.

67.    <u>Predominance</u>:    Common questions of fact or law predominate over individualized issues. The facts surrounding Defendants' enterprise of producing and utilizing false, misleading and/or fraudulent affidavits will predominate over any individualized issues

because this case centers on such conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. The interest of members of the class in individually controlling the prosecution of separate actions is not great given the amount in controversy and the difficulty of detection of the enterprise and proof of it; it is desirable to concentrate this litigation in one forum and there are no known difficulties likely to be encountered in the management of a class action.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, on behalf of herself and the putative class, respectfully requests that judgment be entered against Defendants for all the damages to which they are entitled under Federal Law and Pennsylvania law as follows:

a. Declaratory judgment that the conduct of TNB, Grim, Loken, P&F and John Doe I violated RICO.

b. That the conduct of Defendant TNB violated the PFCEUA.

c. Actual damages in an amount to be determined by trier of fact.

d. Statutory damages as determined by the trier of fact.

e. Treble damages.

f. Costs and reasonable attorney's fees.

g. Injunctive relief precluding TNB, P&F and other law firms retained by TNB from collecting or attempting to collect on any TNB credit card debt without proper authentication and proof of said debt.

h. Such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff continues her demand for a trial by jury of all of the issues in this action.

DATED this 20th day of April, 2011:

                Respectfully Submitted,

                JEFFREY L. SUHER, P.C.

                /s/ Jeffrey L. Suher
                Jeffrey L. Suher, Esquire
                Pa. I.D. # 74924
                4328 Old Wm Penn Hwy., Ste. 2J
                Monroeville, PA 15146
                (412) 374-9005
                (412) 374-0799 (fax)
                lawfirm@jeffcanhelp.com