**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| VICKI L. HIGGINS | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | **AMENDED COMPLAINT** |
| | ) | |
| TARGET CORPORATION,  TARGET | ) | **PUTATIVE CLASS ACTION** |
| NATIONAL BANK, N.A., TERRENCE J. | ) | |
| SCULLY, ADAM GRIM, TIFFANY | ) | |
| LEWIS, KEVIN MARKLING, CHRISTIE | ) | **JURY TRIAL DEMANDED** |
| COMES, KEVIN BENDIX, DENNIS | ) | |
| LAVIGNE, DENISE RANDALL, TYLER | ) | |
| ROESSEL, JANICE L. LOKEN, | ) | |
| MARGARET L. OLSEN, SHANNON | ) | |
| MARIE SOLBERG, ADETOKUNBO | ) | |
| OYEWO and NANCY SOSA | ) | |
| | ) | |
| Defendants. | ) | |

COME NOW, Plaintiff, on behalf of herself and all others similarly situated, by and

through her counsel of record, and for her Complaint against Defendants, alleges as follows:

**SUMMARY OF CASE**

1.      Defendants, by injecting false, misleading, and fraudulent affidavits into legal

proceedings throughout Pennsylvania in the attempted collection of debts, engaged in a

concerted practice of fraudulent, misleading and unlawful debt collection and litigation activity

against Plaintiff and many others like her.

2.      Defendants' collective conduct and illegal enterprise as described herein as will

be proven at trial is a complete affront to the legal system, as well as the thousands of individuals

who suffered adverse consequences as a result of Defendants' collective fraudulent conduct.

3.      Plaintiff, on behalf of herself and others similarly situated, brings this action

against Defendants Target Corporation, Terrence J. Scully, Adam Grim, Tiffany Lewis, Kevin

Markling, Christie Comes, Kevin Bendix, Dennis Lavigne, Denise Randall, Tyler Roessel,

Adetokunbo Oyewo, Nancy Sosa, Janice L. Loken, Margaret L. Olsen, and Shannon Marie

Solberg ("RICO defendants") according to and to remedy Defendants' violations of the

Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO") and against

Defendants Target Corporation and Target National Bank, N.A., according to and to remedy

violations of the Pennsylvania Fair Credit Extension Uniformity Act, 73 Pa.C.S.A. § 2270 et seq.

(PFCEUA).

## PARTIES AND JURISDICTION

4.      Plaintiff Vicki L. Higgins was always relevant hereto a resident and citizen of

Westmoreland County, Pennsylvania.

5.      Target Corporation ("Target") is a foreign corporation with a place of business

located at 1000 Nicollet Mall, Minneapolis, Minnesota.

6.      Defendant Target National Bank, N.A. (hereafter "TNB") is a national banking

association with a place of business located at 3901 W 53rd Street, Sioux Falls, South Dakota

57106. TNB is a subsidiary of Target Corporation.

7.      Defendant Terrence J. Scully ("Scully"), is a resident and citizen of the State of

Minnesota.  Defendant Scully is employed by Target Corporation as President of Target

Financial Services.  Upon information and belief, Scully, as the President of Target Financial

Services, is the officer at Target who authorized the implementation of the false affidavit factory

described below in this complaint.

8.      Defendant Adam Grim ("Grim"), is a resident and citizen of the State of

Minnesota.  Defendant Grim is employed by Target Corporation.

9.      Defendant Tiffany Lewis ("Lewis") is a resident and citizen of the State of

Minnesota.  Defendant Lewis is employed by Target Corporation.

10.      Defendant Kevin Markling ("Markling") is a resident and citizen of the State of Minnesota.  Defendant Markling is employed by Target Corporation.

11.      Defendant Christie Comes ("Comes") is a resident and citizen of the State of Minnesota.  Defendant Comes is employed by Target Corporation.

12.      Defendant Kevin Bendix ("Bendix") is a resident and citizen of the State of Minnesota.  Defendant Bendix is employed by Target Corporation.

13.      Defendant Dennis Lavigne ("Lavigne") is a resident and citizen of the State of Minnesota.  Defendant Lavigne is employed by Target Corporation.

14.      Defendant Denise Randall ("Randall") is a resident and citizen of the State of Minnesota.  Defendant Randall is employed by Target Corporation.

15.      Defendant Tyler Roessel ("Roessel") is a resident and citizen of the State of Minnesota.  Defendant Roessel is employed by Target Corporation.

16.      Defendant Adetokunbo Oyewo ("Oyewo") is a resident and citizen of the State of Minnesota.  Defendant Oyewo is employed by Target Corporation.

17.      Defendant Nancy Sosa ("Sosa") is a resident and citizen of the State of Minnesota. Defendant Sosa is employed by Target Corporation.

18.      Defendant Janice L. Loken ("Loken"), is a resident, citizen and Notary Public of the State of Minnesota.  At all pertinent times hereto, Defendant Loken acted in an official capacity as a notary public in and for the State of Minnesota.  Defendant Loken is an employee of Target Corporation.

19.      Defendant Margaret L. Olsen ("Olsen") is a resident, citizen and Notary Public of the State of Minnesota.  At all pertinent times hereto, Defendant Olsen acted in an official

capacity as a notary public in and for the State of Minnesota. Defendant Olsen is an employee of Target Corporation.

20.     Defendant Shannon Marie Solberg ("Solberg") is a resident, citizen and Notary Public of the State of Minnesota. At all pertinent times hereto, Defendant Solberg acted in an official capacity as a notary public in and for the State of Minnesota. Defendant Solberg is an employee of Target Corporation.

21.     Jurisdiction over Plaintiff's claims is proper in this Court pursuant to RICO, 18 U.S.C. § 1961 et seq. and 28 U.S.C. § 1337. This Court has supplemental jurisdiction to hear and adjudicate Plaintiff's state law causes of action pursuant to 28 U.S.C. § 1367.

22.     Personal jurisdiction is proper as to all Defendants, each of whom has conducted debt collection and/or litigation activities in the Commonwealth of Pennsylvania and availed themselves of the Pennsylvania court system in their capacity as a creditor, notary or affiant and committed unlawful conduct toward Plaintiff , a Pennsylvania resident and citizen. Personal jurisdiction is proper over all Defendants because each of them conducts or has conducted business in Pennsylvania.

23.     This Court has general and specific personal jurisdiction over Defendants. Defendants were each engaged in unfair business practices and a racketeering enterprise directed at and/or causing injury to persons residing, located or doing business throughout Pennsylvania. Plaintiff lived in Pennsylvania for many years; and well before Defendants commenced the state case against her as described below. Defendants knew or should have known that their conduct on which this case is based was directed significantly at Plaintiff in the Commonwealth of Pennsylvania at the time of their conduct. Defendants knew or should have known that Plaintiff

lived in Pennsylvania at the time they created or used the false and misleading affidavit against

Plaintiff in the state court case described below.

24.     Venue is proper in this District because Plaintiff lives in this District, the pertinent

facts as to Plaintiff's claim occurred in this District and Defendants all transact business within

this District.

25.     The business activities of Defendants at issue in this Complaint were within the

flow and substantially affected interstate trade and commerce.  There has been a continuous and

uninterrupted flow of activities in interstate commerce throughout the class period.  The class

period runs from April 20, 2007 to the date of class certification.

## FACTS

### The Target Corporation Fictitous Affidavit Factory

26.     Target operates as two reportable segments.  Retail and credit card.  Target's

credit card segment offers credit to guests through Target's branded proprietary credit cards, the

Target Visa and the Target Card.  Additionally, Target offers a branded proprietary Target debit

card . Collectively, these cards help strengthen the bond with Target's guests, drive incremental

sales and contribute to Target's results of operations.  According to Target's 2010 annual report,

Target's credit card program supports Target's core retail operations and remains an important

contributor to Target's overall profitability and engagement with its guests.

27.     On April 21, 2009, the law firm of Patenaude & Felix, A.P.C. ("P&F"), sued Mrs.

Higgins in the name of TNB on an alleged credit card debt . On July 7, 2009, the P&F law firm

filed a praecipe to reinstate the complaint. (*Target National Bank v. Vicki L. Higgins,* Case No.

09CI03908, in the Court of Common Pleas of Westmoreland County) (Hon. Judge Ackerman,

presiding) (hereafter the "Higgins state court case").

28.     The complaint included, and relied upon, an affidavit provided by Defendant Grim (hereafter "the Affidavit" attached hereto as **Exhibit "A"**).  Defendant Grim, according to the affidavit, purported to be the "Authorized Agent of Target National Bank".

29.     According to the affidavit, Defendant Grim "reviewed the records of the above listed person (Vicki L. Higgins) and account,..."

30.     The affidavit was purportedly signed and executed by "Adam Grim" and notarized by Defendant Loken.

31.     Mrs. Higgins subsequently obtained information indicating that the affidavit was fraudulent, false and misleading.  Specifically, Defendant Grim **did not** review the records of Vicki L. Higgins and the account.  In fact, Defendant Grim didn't review any records prior to allegedly executing the affidavit.  Upon information and belief, at the time Grim executed the affidavit attached to this complaint as Exhibit A, he was in the process of executing hundreds of similar affidavits.

32.     The P&F law firm discontinued without prejudice the Higgins state court case on September 4, 2009.

33.     Mrs. Higgins incurred attorney's fees because of defending the lawsuit.

34.     Defendant Grim did not appear before Defendant Loken, swear to the truth of the statements in the affidavit, or sign it in her presence.

35.     Defendant Loken notarized the affidavit despite knowing that Defendant Grim did not swear on oath to the truth of the content of the affidavit.

36.     Defendants used email, the internet, and the U.S. mail to transmit and receive affidavits.

37.     Thousands (or more) of these false and misleading affidavits were concocted by Target employees and transmitted to P&F and other law firms, including Blatt, Hasenmiller, Leibsker & Moore, LLC ("Blatt")  and by P&F, Blatt and other law firms to courts across Pennsylvania in which lawsuits were filed in the name of TNB to collect the debts  claimed against the thousands of people  sued.

38.     Defendant Loken, pursuant to the law of Minnesota where she was wrongfully notarizing the false and misleading affidavits, was required to maintain a notary book of record documenting the date and identity of the affiant for all affidavits she notarized.

39.     Upon information and belief, Defendant Loken failed to maintain a notary book of record.

40.     Defendant Loken routinely placed her notary stamp or seal on the false and misleading affidavits even though the affiant never reviewed the records of the alleged debtor and account.

41.     In addition to Defendant Grim, Defendants Lewis, Markling ,Comes, Bendix, Lavigne, Randall, Roessel, Oyewo , Olsen, and Sosa  allegedly signed affidavits identical to the affidavits allegedly signed by Defendant Grim.  Upon information and belief, like Defendant Grim, these Defendants **did not** review the records of the consumer and the account.

42.     In addition to Defendant Loken, Defendants Olsen and Solberg notarized similar affidavits allegedly executed by Target employees.

43.     Upon information and belief, the affiants did not appear before Defendants Olsen and Solberg, swear to the truth of the statements in the affidavit, or sign it in their presence.

44.     Defendants Olsen and Solberg notarized the affidavits despite knowing that the affiants did not swear on oath to the truth of the content of the affidavit.

45.     Defendants Olsen and Solberg, pursuant to the law of Minnesota where they were wrongfully notarizing the false and misleading affidavits, were required to maintain a notary book of record documenting the date and identity of the affiant for all affidavits they notarized.

46.     Upon information and belief, Defendants Olsen and Solberg failed to maintain a notary book of record.

47.     Defendants Olsen and Solberg routinely placed their notary stamp or seal on the false and misleading affidavits even though the affiant never reviewed the records of the alleged debtor and account.

48.     Target took the false and misleading affidavits and used them to file law suits in the name of TNB against hundreds, and perhaps thousands, of alleged debtors.  The consequence was the putative class: (a) paid Target with the false belief and understanding that the affidavits were authentic, true, and legal statements; (b) incurred unnecessary attorney's fees and costs defending lawsuits brought in the name of Target National Bank; (c) lost lawsuits brought against them in the name of  TNB wherein courts of law relied upon the affidavits as authentic, true and legal statements; (d) had their credit scores suffer with the placement of an adverse judgment on their credit reports ; and (e) suffered other consequences unknown at this time, as a consequence of Defendants' false representations that the affidavits were authentic, true, accurate and/or reliable in a court of law as proof that the debtors owed anything.

49.     P&F relied on the affidavits to file suit in the name of TNB.  Upon information and belief, Blatt also relied on the affidavits.  Thus, the affidavits are material.

## COUNT I

## VIOLATION OF THE RACKETEER INFLUENCED CORRUPT ORGANIZATION ACT

50.     Plaintiff repeats and re-alleges all of the Paragraphs above as if they were repeated here *verbatim*.

51.     At all relevant times hereto, Defendants were "persons" within the meaning and scope of 18 U.S.C. § 1961.

52.     At all relevant times hereto, Plaintiff and each putative member of the class was and is a person within the scope and meaning of 18 U.S.C. § 1961(3).

53.     From on or about July 2005 through the present, in the Western District of Pennsylvania and elsewhere, Target National Bank, N.A. Patenaude & Felix, A.P.C. , and Blatt, Hasenmiller, Leibsker & Moore, LLC   acted as an association in fact enterprise under 18 U.S.C. § 1961(4).

54.     The RICO defendants participated in the operation or management of the enterprise by retaining the law firm, directing what accounts are to be referred to the law firm and/or providing the fraudulent affidavits.

55.     The RICO defendants engaged in an ongoing, open-ended scheme, artifice and pattern of racketeering under 18 U.S.C. § 1962(c), committing thousands of predicate acts of mail fraud, wire fraud by knowingly and intentionally: (a) providing false, misleading and/or fraudulent affidavits to P&F, Blatt and other law firms unknown to Plaintiff; and (b) providing false, misleading and/or fraudulent affidavits to Pennsylvania Courts.

56.     The individual RICO defendants aided and abetted in all such illicit and illegal activity.

57.     From on or about July 2005 through the present, in the Western District of Pennsylvania and elsewhere, Target committed its pattern of mail fraud and wire fraud through

the association in fact enterprise who used the fictitious affidavits to effectuate the predicate acts

of mail fraud and wire fraud under the control and direction of Target.

58.     Upon information and belief, Target does not activity manage TNB.

59.     Upon information and belief, TNB was not aware that the affidavits were

fraudulent.

60.     Target played an active role in the fraud from its Minnesota headquarters that was

not played by TNB.

61.     The frauds which constitute the RICO, predicate acts were committed by Target

and its employees.

62.     By directing that suit be filed in the name of TNB and by providing fraudulent

affidavits which were filed along with the lawsuits, Target caused TNB to take certain actions to

carry out the unlawful directions of Target.

63.     In the period from July 2005 through the present, the enterprise had an ongoing

organization and functioned as a continuing unit.  During that period, one or more employees at

Target regularly communicated, separately, with one or more employees at P&F, Blatt and other

law firms to arrange the filing of lawsuits.  And during that period, employees at Target, P&F,

Blatt and other law firms regularly communicated to request and receive the false and misleading

affidavits to use in false filings in courts.

64.     The RICO defendants committed the predicate acts of mail and wire fraud in

violation of 18 U.S.C. §§ 1341 and 1343 in at least the following ways. First, they used the mails

or wires on thousands of occasions to send the false and misleading affidavits to P&F, Blatt and

other law firms.  Second, P&F, Blatt and other law firms used the mails or wires on thousands of

occasions to send the false and misleading affidavits to courts to be filed in the records of the

collection lawsuits commenced against Plaintiff and the class she seeks to represent.  And third, P&F, Blatt and other law firms used the mails or wires on hundreds, and perhaps thousands, of occasions to send copies of the false and misleading affidavits to the persons against whom it filed those lawsuits against or their lawyers.

65.     Plaintiff cannot presently allege the specific dates of the mailings and wire transmissions she alleges here because she does not have access to them.  Nor can she presently identify the specific persons who, acting on behalf of Target used the wires or mails in each of the occasions described above, although it seems obvious that those persons were employees or representatives of Target.  The records of those mailings and wire transmissions are maintained by Defendants, by the courts in which P&F, Blatt and other law firms filed the false and misleading affidavits, perhaps by the persons against whom P&F, Blatt and other law firms filed those lawsuits against (or their lawyers).  Plaintiff will request copies of those records in discovery in this case, and when and if necessary, will further amend this Complaint to provide additional and more specific information on the dates of the mailings and wire transmissions, the specific content of those mailings and wire transmissions, and the identities of the persons who mailed or wired them for Defendants.

66.     During the time frame alleged herein, Target profited from the use of false, misleading and/or fraudulent affidavits by being able to transmit accounts without having to take the time or expense to actually demonstrate, through evidence admissible in a court of law, that the debts were due, valid and owing and/or by being able to transmit accounts that it would not have been able to transmit if it had been required to provide such evidence.

67.     The interstate commerce requirement of a RICO claim is satisfied because the racketeering claims alleged herein arise out of, and are based upon, Defendants' repeated and

systematic use of interstate mail and wire transfers in furtherance of the racketeering schemes alleged herein.

68.     Defendants purposely and knowingly misrepresented the form, nature, substance and viability of the affidavits provided by Target, by and through the employees named herein and others, which is the direct and proximate cause of Plaintiff's and the putative class members' injury and damages.

69.     Plaintiff and the putative class members are direct victims of Defendants' wrongful and unlawful conduct and have been injured in their business or property for the purposes of 18 U.S.C. § 1964(c).  As the direct victims of Defendants' wrongful conduct, Plaintiff and the putative class have been injured in an amount to be determined by a jury at trial. Because the information necessary to calculate damages is contained in Defendants' records, the Court will not need to adopt complicated rules apportioning damages in order to obviate multiple recoveries.  Plaintiff will seek leave to amend this Complaint to set forth the exact amount thereof when the same is discerned.

70.     As a direct and proximate result of Defendants' racketeering activities as described herein, Plaintiff, on behalf of herself and the putative class members, is entitled to recover treble damages for the injuries sustained, restitution, as well as costs of suit and reasonable attorney's fees pursuant to 18 U.S.C. § 1964(c).

71.     As a direct and proximate result of Defendants' racketeering activities as described herein, Plaintiff, on behalf of herself and the putative class members, is entitled to an Order, pursuant to 18 U.S.C. § 1964(a), enjoining and prohibiting Defendants from further engaging in the unlawful conduct which the enterprise has engaged in.  Such an Order should provide that Defendants cannot take any further action in which they used the affidavit described

here and that they must disgorge any money they already have collected on or from any such

judgment.

## COUNT II

### VIOLATION OF THE PENNSYLVANIA
### FAIR CREDIT EXTENSION UNIFORMITY ACT

**(Asserted on Behalf of Plaintiff
and the Putative Class Against Target and TNB)**

72.     Plaintiff repeats and re-alleges all of the Paragraphs above as if they were restated

here *verbatim*.

73.     Target and TNB are "creditors" as defined by the Pennsylvania Fair Credit

Extension Uniformity Act ("PFCEUA"), 73 Pa. Cons. Stat. Ann. § 2270 et seq.

74.     Section 2270.4(b)(5)(x) of the PFCEUA prohibits "The use of any false

representation or deceptive means to collect or attempt to collect any debt..."

75.     Target and TNB violated § 2270.4(b)(5)(x) of the PFCEUA by: (1) filing false,

misleading, and/or fraudulent affidavits in an attempt to collect a debt.

76.     Plaintiff and the putative class have suffered and continue to suffer damages as a

result of Target and TNB's violations of the PFCEUA.

77.     Target and TNB's unfair or deceptive debt collection practices under the

PFCEUA constitute a violation of the act of December 17, 1968 (P.L. 1224, No. 387), known as

the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

78.     Plaintiff and the putative class are entitled to recover statutory damages, treble

damages and reasonable attorney's fees and costs as provided by the PFCEUA and within the

applicable statute of limitations.

## <u>CLASS DEFINITIONS, ALLEGATIONS<br>AND INJURY TO THE CLASS</u>

79.     Plaintiff brings this action on her own behalf and on behalf of all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Plaintiff seeks certification of a class under Rule 23.

80.     <u>Class Definition:</u>       The class is composed of all Pennsylvania citizens against whom Defendants used (either directly, through an attorney or agent, or through a legal filing) an affidavit substantially similar to the affidavit form reflected in Exhibit "A" of this Complaint.

81.     <u>Numerosity:</u>   The class is comprised of thousands of persons and is so numerous that joinder of all members is impracticable.

82.     <u>Commonality:</u> There are questions of law and/or fact common to the class.  The claims/defenses of Plaintiff as the representative party are typical of the claims/defenses of the class.  Further, the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and include, without limitation, the following:

a.      Whether the RICO defendants conducted the affairs of an enterprise and/or participated in a pattern of racketeering activity.

b.      Whether Target and TNB violated § 2270.4(b)(5)(x) of the PFCEUA by: (1) filing with Pennsylvania Courts false, misleading and/or fraudulent affidavits in an attempt to collect a debt.

c.      Whether the class is entitled to compensatory relief.

d.      Whether the class is entitled to statutory relief.

e.      Whether the class is entitled to injunctive relief.

f.      Whether the class is entitled to declaratory relief.

g.      Whether the class is entitled to attorney's fees and costs.

83.    <u>Typicality and Adequacy:</u>     Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the class members she seeks to represent, and she is similarly situated with members of the class.  Plaintiff, as a representative party of the class, will fairly and adequately represent and protect the interests of the class.  Furthermore, Plaintiff's interests are not antagonistic to the class.  Plaintiff has retained counsel who is competent and experienced in the prosecution of class action litigation.

84.    <u>Predominance:</u>        Common questions of fact or law predominate over individualized issues.  The facts surrounding Defendants' enterprise of producing and utilizing false, misleading and/or fraudulent affidavits will predominate over any individualized issues because this case centers on such conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The interest of members of the class in individually controlling the prosecution of separate actions is not great given the amount in controversy and the difficulty of detection of the enterprise and proof of it; it is desirable to concentrate this litigation in one forum and there are no known difficulties likely to be encountered in the management of a class action.

<b><u>PRAYER FOR RELIEF</u></b>

**WHEREFORE,**  Plaintiff, on behalf of herself and the putative class, respectfully requests that judgment be entered against Defendants for all the damages to which they are entitled under Federal Law and Pennsylvania law as follows:

a.      Declaratory judgment that the conduct of TNB, Grim, Loken, P&F and John Doe I violated RICO.

b.      That the conduct of Defendant TNB violated the PFCEUA.

c.      Actual damages in an amount to be determined by trier of fact.

d.      Statutory damages as determined by the trier of fact.

e.      Treble damages.

f.      Costs and reasonable attorney's fees.

g.      Injunctive relief precluding TNB, P&F and other law firms retained by TNB from collecting or attempting to collect on any TNB credit card debt without proper authentication and proof of said debt.

h.      Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff continues her demand for a trial by jury of all of the issues in this action.

DATED this 4th day of May, 2011

Respectfully Submitted,

JEFFREY L. SUHER, P.C.

/s/ Jeffrey L. Suher
Jeffrey L. Suher, Esquire
Pa. I.D. # 74924
4328 Old Wm Penn Hwy., Ste. 2J
Monroeville, PA 15146
(412) 374-9005
(412) 374-0799 (fax)
lawfirm@jeffcanhelp.com