```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

_____

VICKI L. HIGGINS,
              Plaintiff,

                                      Civil Action
    vs                                        No. 11-521

TARGET CORPORATION,
              Defendant.

_____

      Transcript of proceedings held on Wednesday, November 9, 2011, United States District Court, Pittsburgh, Pennsylvania, before the Honorable Joy Flowers Conti, U.S. District Court Judge.

APPEARANCES:

For the Plaintiff:         JEFFREY L. SUHER, Esq.

For the Defendant:        DANIELLE M. VUGRINOVICH, Esq.
                                  BRIAN MELENDEZ, Esq.

Court Reporter:           Shirley Ann Hall, RDR, CRR
                                  6260 U.S. Courthouse
                                  Pittsburgh, PA 15219
                                  (412) 765-0408

Proceedings recorded by mechanical stenography; transcript produced by computer-aided transcription.

```
 1                    P R O C E E D I N G S
 2                         * * * * *
 3            (In open court.)
 4            THE COURT:  This is a hearing on a motion to dismiss
 5   the second amended complaint as well as the scheduling
 6   conference in the civil action Higgins versus Target
 7   Corporation.  It's at Civil No. 11-521.
 8            Will counsel please enter your appearance.
 9            MR. SUHER:  Jeff Suher, S-U-H-E-R, for the
10   Plaintiff.
11            MR. MELENDEZ:  Brian Melendez for Defendant Target.
12            MS. VUGRINOVICH:  Danielle Vugrinovich for Defendant
13   Target.
14            THE COURT:  Okay.  I'm going to take up the motion
15   to dismiss first, because I have problems with the complaint
16   in terms of whether it states a RICO action.
17            But the first threshold issue is that there was a
18   failure to comply with the Court's local rules when you deal
19   with RICO claims.  The Court has a specific requirement in
20   Local Rule 7.1B; and 7.1B requires if there's a civil action
21   under 18 United States Code, Section 1961 through 1968 --
22   which this would be -- shall file with the complaint or within
23   fourteen days thereafter a RICO case statement in the form set
24   forth in the appendix at Local Civil Rule 7.1B or another form
25   as directed by the Court.
```

1           And the RICO case statement is very specific, which
2  requires you to go paragraph by paragraph, and I don't see
3  that filed.
4           MR. SUHER:  I did file it in connection with the
5  first complaint, and that was -- that was the RICO statement
6  that I'm going to use with the second amended complaint.  I
7  did file it within the fourteen days.
8           THE COURT:  Okay.  That was not clear.
9           Can you print that out for me?
10          MR. MELENDEZ:  I have a copy of it here, Your Honor.
11          THE COURT:  I need to see it, too.
12          MR. SUHER:  I probably should have refiled it after
13 the second amended complaint to make matters clear; so it was
14 filed.
15          THE COURT:  We were looking for it and couldn't find
16 it.
17          MR. MELENDEZ:  I was going to ask him about that,
18 and I couldn't do it --
19          THE COURT:  Because I couldn't find it.
20          MR. SUHER:  Thank you.
21          THE COURT:  I'll need to look through that, too.
22          Let's move on for the movement and I'll tell you
23 where my problem lies with the RICO complaint.
24          MR. SUHER:  Sure.
25          THE COURT:  As you know, under Rule 9(b) of the

1  Rules of Civil Procedure, if there's fraud that is being
2  alleged, the fraud has to be pled with particularity, so
3  there's a heightened pleading standard in this situation where
4  the RICO claim rests upon mail fraud and wire fraud.  That's
5  my understanding of what the thrust of the complaint is, mail
6  fraud or wire fraud.
7            And because of that, there has to be particularity
8  in the pleading.  And when you look at both mail fraud and
9  wire fraud, there has to be a scheme to defraud that is --
10 that is alleged; and so I have to be able -- looking through
11 the complaint, be able to see if there is particularity with
12 respect to fraud.
13           In the scheme to defraud, there has to be at least
14 two predicate acts of racketeering required to meet the burden
15 imposed by RICO.  And to prove a racketeering pattern, the
16 Plaintiff must show, as noted, at least two racketeering
17 predicates that are related and that it amounts to or poses a
18 threat of criminal activity, <u>Zax Environmental, Inc. versus</u>
19 <u>Plant Construction Company, LLC</u>, Westlaw 2509759 at *3,
20 Western District, PA, 2008, citing <u>H.J., Inc. versus</u>
21 <u>Northwestern Bell Telephone Company</u>, 492 US 229, 1989.
22           And when the alleged racketeering activities include
23 mail and wire fraud, the federal mail and ware fraud statutes
24 require that the mail or interstate wires be used for the
25 purpose of carrying out this scheme to defraud.

1    Now, elements of a mail fraud are a scheme to
2 defraud, use of the mails to further that intent, and
3 fraudulent intent.  <u>United States versus Pharis</u>, 298 F.3d 228,
4 Third Circuit, 2002.
5    The Court will note that the scheme does not have to
6 be fraudulent on its face, but it must involve some form of
7 fraudulent misrepresentation or omission reasonably calculated
8 to deceive persons of ordinary prudence and comprehension.
9 And that's from Page -- that's from the Third Circuit decision
10 in <u>Kehr Packages, Inc. versus Fidelcor, Inc.</u>, 926 F.2d 1406,
11 Third Circuit, 1991, and it's at Page 1415.
12    So the Court needs to see if I can look at the
13 complaint and I can see a fraudulent misrepresentation or
14 omission that was intended to deceive persons of ordinary
15 prudence by tricking them or deceiving them out of something
16 of value.  <u>Camilio versus State Farm Fire and Casualty</u>
17 <u>Company</u>, 334 F.3d 345, Third Circuit, 2003.
18    Now, the allegations of misrepresentation here have
19 to do with affidavits which were submitted in connection with
20 complaints filed in debt collection actions.  The Plaintiff is
21 alleging that there were robo-signing or blindly executed
22 affidavits and that this was arguably fraud for purposes of
23 the mail fraud and wire fraud statutes.
24    Now, the fraud here -- the scheme to defraud
25 apparently, according to the Plaintiff, was to save the

1  Defendant money since they didn't have to do an affidavit.
2  But I don't really see what the fraud is in terms of deceiving
3  a person of ordinary prudence when it's clear from the related
4  case, which I can take judicial notice of, that she was not
5  deceived, there was no debt that she owed, and so there was no
6  way that there could be any defrauding that was taking place.
7  There was no intent to -- on the face of the complaint that I
8  can see to trick her out of something of value.
9      You know, there certainly were expenses incurred in
10 the defense of the action that she was involved with; but at
11 best, you know, it would strike the Court that there may be
12 some other claim that might be arising, but it's very hard for
13 the Court at this stage to see that this could amount to
14 sufficient pleading for a fraudulent intent.
15     And I just wanted to read also from a couple of the
16 treatises dealing with civil RICO.  The first is Civil RICO
17 Practice Manual, Third Edition, by Paul A. Batista.  And in
18 this the Court has noted -- I mean the courts in terms of the
19 analysis, the commentator states that allegations of fraud in
20 a civil racketeering case must also provide facts that give
21 rise to a strong inference of fraudulent intent, the scienter
22 element which is an inherent part of any fraud based claim.
23 This is from Section 3.37B on Page 3-137 of the 2010
24 supplement.
25     In the RICO Civil Law and Criminal Law and Strategy

1   Treatise by Rakoff and Goldstein, notes that even though
2   Rule 9(b) does not require Plaintiff to plead intent itself
3   with particularity, the Plaintiff must allege sufficient facts
4   from which a fact finder can infer fraudulent intent.  And
5   that's from Section 1.041 on Page 1-38.3.
6              So those are the concerns that I have.  There's just
7   not enough from which I can infer any type of fraudulent
8   intent here.  And that's because if there was no debt to be
9   collected for this particular Plaintiff, then I would have to
10  be inferring that there were false claims being filed where
11  they knew there was no debt owed, but they still were going to
12  file them because somehow they were going to save money in the
13  back office.  It just doesn't make any sense to me, that I can
14  infer some kind of fraudulent intent here to support a RICO
15  claim.
16             MR. SUHER:  If I may, Your Honor, it's our position
17  that, first off, the affidavit in and of itself is fraudulent
18  because by the terms of the affidavit --
19             THE COURT:  I know that's what the allegation is,
20  but -- so you have a misrepresentation.
21             MR. SUHER:  Right.
22             THE COURT:  But where's the fraudulent intent?
23  What's the fraudulent intent?
24             MR. SUHER:  If you file a false affidavit, that's --
25  that's our belief fraud; I mean how can that not be fraud?

1    THE COURT:  For a person of reasonable intelligence
2  who knows that they don't any money, that this is fraud?
3    MR. SUHER:  Well, yeah.  The thing about RICO, we --
4  number one, we don't have to establish that my client relied
5  on this affidavit.  I have testimony in the underlying case --
6  and we cited that testimony I believe in the complaint -- that
7  the lawyer who handled these cases for the law firm that filed
8  it, he testified that they rely on these affidavits to file
9  these lawsuits.  So it's our position because they are relying
10 on these affidavits, meaning --
11   THE COURT:  What's the fraudulent intent?  I mean
12 what end?  They could have a false affidavit --
13   MR. SUHER:  Right.
14   THE COURT:  -- but how is that fraud?
15   MR. SUHER:  It's fraud -- it's fraud on the attorney
16 that's relying --
17   THE COURT:  Mail fraud, scheme to defraud, where is
18 the scheme to defraud?  Who is being defrauded?
19   MR. SUHER:  The courts.  The courts are being
20 defrauded.  They're filing false affidavits with the courts.
21 Robo-signing.  The point's --
22   THE COURT:  Courts are being defrauded?
23   MR. SUHER:  Yeah, the courts are being defrauded.
24 If I were to file a false affidavit with the court, I'm
25 defrauding the court.

1              THE COURT:  How?
2              MR. SUHER:  Because I'm filing a false affidavit
3    with the court.
4              THE COURT:  But there has to be a scheme -- you have
5    to be trying to get something from the court.  What are you
6    trying to get from the court?
7              MR. SUHER:  Well, what they're ultimately trying to
8    get, not necessarily from the court --
9              THE COURT:  There may be malpractice involved there,
10   there could be misuse of process, you know, lots of claims.
11             MR. SUHER:  Right.
12             THE COURT:  But I'm not sure it's -- that they're
13   trying to get something from the court.
14             MR. SUHER:  Well, I'm just saying if you want to ask
15   me where the fraud is --
16             THE COURT:  That's what I'm saying, where is the
17   scheme to defraud?
18             MR. SUHER:  Right.  There's fraud on the court,
19   there's fraud on the lawyer who relied on it.  The scheme to
20   defraud is the same scheme the mortgage companies are using.
21   The reason why they do this again is because they're saving
22   money by doing it.  They don't then have to have somebody
23   physically review these files --
24             THE COURT:  I'm not saying it's correct --
25             MR. SUHER:  I understand.

1            THE COURT:  -- or there's not some other claim
2  there.  I'm really struggling here --
3            MR. SUHER:  I'm giving you my position.
4            THE COURT:  I'm really struggling.  This is the one
5  element here that I couldn't get over this threshold, --
6            MR. SUHER:  I understand, Judge, right.
7            THE COURT:  -- what I see as a fundamental pleading
8  problem --
9            MR. SUHER:  Right.
10           THE COURT:  -- in the context of this case.
11           MR. SUHER:  Yes.
12           THE COURT:  Where's the scheme to defraud?  I
13  understand they are trying to save money.
14           MR. SUHER:  Uh-huh.
15           THE COURT:  And they -- they have -- the affidavit
16  may be false.
17           MR. SUHER:  Uh-huh.
18           THE COURT:  I'm giving you the benefit of the doubt
19  on that.
20           MR. SUHER:  Uh-huh.
21           THE COURT:  But at the end, where is the scheme to
22  defraud?  I mean what were they trying to do?
23           MR. SUHER:  Uh-huh.
24           THE COURT:  And I don't know that any of these
25  mortgage cases have gone into RICO, that they've been able to

1  overcome this.  Have these mortgage cage cases?
2          MR. SUHER:  They've either been dismissed because
3  there may be judgments in the state court action, so trying to
4  attack it in Federal Court, they're saying they're going to
5  dismiss it; and what's happening is most of the State Attorney
6  Generals are the ones that are going after them.  They're not
7  private suits.
8          THE COURT:  Yes.
9          MR. SUHER:  So --
10         THE COURT:  I just don't -- you know, for RICO
11 purposes --
12         MR. SUHER:  I understand, Judge.
13         THE COURT:  Would you like to be heard on this?
14         MR. MELENDEZ:  Well, I think Your Honor has
15 understood very clearly one of our arguments about the lack of
16 any scheme to defraud.  I think -- and that's the correct
17 threshold issue; there are issues later down the road.
18         THE COURT:  I know there's going to be class action
19 problems --
20         MR. MELENDEZ:  Even before you get to class action
21 problems, I think there's a causation problem and a standing
22 problem, the causation problem being Mr. Suher refers to this
23 as a false affidavit, but he's really only quibbling with one
24 word, whether or not the affiant reviewed the account because
25 the affidavit uses that word.

1     THE COURT: It goes more to the merits of what --
2 you know, how the Court would view that.
3     MR. MELENDEZ: Well, but a woman who knows that she
4 doesn't have an account with Target can't be damaged as a
5 result of -- the words from RICO, the causation requirement --
6 as a result of an affidavit that she knows is not about her
7 and is not about an account she has.
8     So I think that you've got -- I think that is also a
9 threshold issue rather than getting into the merits.  If she
10 knows she doesn't have an account with Target and she knows
11 this affidavit has to be referring to somebody else, how can
12 that affidavit cause her any damage, cause her any injury?
13     THE COURT: Well, it's because it was filed as part
14 of a lawsuit, where she has to defend the case.
15     MR. MELENDEZ: Well, right.  But the reason it got
16 filed in a lawsuit against her is because she was
17 misidentified, which has nothing to do with the content of the
18 affidavit.
19     THE COURT: Yes.
20     MR. MELENDEZ: The alleged falseness of the
21 affidavit, even if you concede that point, which obviously
22 Target doesn't, --
23     THE COURT: Yes?
24     MR. MELENDEZ: -- that did not cause the injury.
25 The misidentification did, which had nothing to do with the

1  content of the affidavit.
2          THE COURT:  Yes.
3          You want to be heard on that?
4          MR. SUHER:  I disagree.  I think the Court pointed
5  out that her damages would be she had to spend money and
6  defend the case.
7          THE COURT:  The big issue for me --
8          MR. SUHER:  Right.
9          THE COURT:  -- at this stage which I am having a
10 difficulty --
11         MR. SUHER:  Right.
12         THE COURT:  -- overcoming is that, so let me take a
13 minute and let me take a look at your RICO case statement
14 because I didn't review this.
15         (Brief pause in proceedings.)
16         THE COURT:  Now, there is an allegation in
17 Paragraph No. 17 that each Plaintiff -- this is the question:
18 List the damages sustained by each Plaintiff for which each
19 Defendant is allegedly liable.  And the response is:  A.  Pay
20 Target with a false belief and understanding that the
21 affidavits were authentic.
22         And I don't see any factual allegations in the
23 complaint from which I could conclude that that, in fact, has
24 happened, that I could say that that was plausible on the face
25 of the complaint.

1           B was:  Incurred unnecessary attorney's fees and
2  costs defending lawsuits.  I think that is pled, but I can't
3  see that situation as giving rise to -- as being involved as a
4  scheme to defraud.
5           MR. SUHER:  Right.
6           THE COURT:  And then there's the -- C is:  Lawsuits
7  brought against them in the name of Target National Bank,
8  whereupon courts of law relied upon the affidavits as
9  authentic, which would be somewhat similar to A, meaning that
10 somebody is, you know, going to have a judgment against them
11 which would put them at risk of having to pay money.  But I
12 don't see that implicated in terms of the factual allegations.
13 I don't see any specifics from which I -- that would help me
14 to infer an intent to defraud on that basis.
15          And then D:  Had their credit scores suffer with the
16 placement of an adverse judgment on their credit reports,
17 which would be related to C.
18          MR. SUHER:  Uh-huh.
19          THE COURT:  So I mean if you had, you know, factual
20 allegations to implicate A, C and D, I might agree with you
21 that at least at the motion to dismiss stage I could infer a
22 fraudulent intent, but I don't have that yet.
23          So what I would do at this stage is find that the
24 motion to dismiss would have to be granted without prejudice
25 because at this stage the Court cannot discern the requisite

1  pleading which has to be pled with particularity sufficient
2  for the Court to be able to infer fraudulent intent; and under
3  the facts as pled, I am just not able to make that type of
4  conclusion, that I can see a scheme to defraud that has been
5  pled with the requisite particularity.
6          Now, if you had some facts that could show that, as
7  set forth in Paragraph 17-A, C and D, that maybe people were
8  paying money that they didn't owe because of this, you know,
9  that may be sufficient.  And if you have that, you would be
10 able to file an amended complaint and I would permit you to do
11 so.  So that would be my final ruling on that.
12         MR. SUHER:  Okay.
13         THE COURT:  Do you want to -- how long do you think
14 you would need to see if you want to file that?
15         MR. SUHER:  Twenty days.
16         THE COURT:  Okay.  So you'll have twenty days to
17 file an amended complaint.
18         Now, we have the -- you've agreed on a mediator.
19 What's happening with the underlying case?  Where does that
20 stand?
21         MR. MELENDEZ:  There's a motion for -- motion for
22 summary judgment pending; it's been fully briefed.  There is a
23 pending motion from the Plaintiff to file supplemental
24 evidence --
25         THE COURT:  Okay.

1    MR. MELENDEZ: -- that I believe also Patenaude &
2 Felix just responded to; Target responded just a couple of
3 weeks ago.
4    THE COURT: Do you want to go to mediation and all
5 of these things, is that worthwhile?
6    MR. MELENDEZ: I think we've already got a mediation
7 scheduled for the second of December.
8    THE COURT: Why don't you keep that because that
9 would still fall --
10   MR. SUHER: Can I have more than the twenty days
11 then? Can I have sixty days, is that too much? Forty-five?
12   THE COURT: How about until January the 9th? You'll
13 have to file an amended complaint.
14   MR. SUHER: That's fine, Judge, thanks.
15   THE COURT: Why don't you go to the mediation and
16 mediate everything again and put it all in.
17   MR. MELENDEZ: Your Honor, the negotiations -- we
18 have talked about settling the cases individually. We also
19 talked about settling them together.
20   THE COURT: I think it would be wise to do that.
21 Okay? And you'll have the benefit of my analysis today, you
22 know, --
23   MR. SUHER: Thank you, Judge.
24   THE COURT: -- which you can put forth. Okay. So
25 if you don't file the second amended -- third amended

1  complaint to address these concerns that I've set forth on the
2  record today, that's not filed by January the 9th, then the
3  case would be dismissed with prejudice.  All right?
4            MR. SUHER:  Okay.
5            THE COURT:  And let's go through -- let's go to ADR;
6  and if you do file it, then we will come back and set -- have
7  another scheduling conference, how does that sound?
8            MR. MELENDEZ:  Sounds good.
9            THE COURT:  You have a mediation, so let's do this.
10 You are going to go to Patricia Dodge, you're going to pay it
11 fifty/fifty.  Who is going to be the counsel who would
12 coordinate the date, time, and location?
13           MR. SUHER:  We have it already scheduled.
14           THE COURT:  Somebody filed a notice of that?
15           MS. VUGRINOVICH:  I have not done that.  I can do
16 that, that's no problem.
17           THE COURT:  Okay, so if you can file that,
18 Miss Vugrinovich.
19           MS. VUGRINOVICH:  Yes.
20           THE COURT:  Could you file that, please, by November
21 the 23rd?
22           MS. VUGRINOVICH:  Sure.
23           THE COURT:  Of this month, and then the conference
24 has to be concluded by January the 9th -- you say you already
25 have it scheduled for December.

1          MS. VUGRINOVICH:  Right.
2          THE COURT:  Well, good luck with the mediation.
3          MR. SUHER:  Thank you, Your Honor.
4          MR. MELENDEZ:  Thank you, Your Honor.
5          MS. VUGRINOVICH:  Thanks, Judge.
6          THE COURT:  Thank you.
7          (Whereupon, the hearing was concluded at 5:20 p.m.)
8               * * * * *
9                C E R T I F I C A T E
10         I, Shirley Ann Hall, certify that the foregoing is a
11 correct transcript for the record of proceedings in the
12 above-titled matter.
13
14
15                              s/Shirley Ann Hall
                                Shirley Ann Hall, RDR, CRR
16                              Official Court Reporter